*J. E. McDonald* and *A. L. Roache,* for appellee.

———⚬———

## Wynn and Wife *v.* Sharer.

Trust.—The complaint avers, in substance, that in the year 1858 the plaintiff employed *A,* as his agent, to purchase a lot of ground of about one acre, upon which plaintiff designed to erect a house suitable for himself and wife to live in; that said *A* did so purchase for plaintiff said lot of ground, which is fully described in the complaint; that the plaintiff paid as the consideration therefor the sum of $100 to one *B,* the owner of the same at that time; that *B,* instead of conveying the lot to plaintiff, as he should have done, conveyed it to *C,* as a trustee for and for the use of *D;* that said deed was so made without the knowledge or consent of plaintiff; that since the making of said deed *D* has died. Prayer, that the court decree that plaintiff is entitled to a conveyance of the premises, and that defendants be compelled to convey to him, etc.

*Held,* that the facts stated in the complaint are sufficient to establish a trust in favor of the plaintiff.

*Held,* also, that the words " absolute conveyance in his own name," used in the 8th section of " An Act concerning Trusts and Powers," 1 G. & H. 651, as applied to the facts stated in the complaint, mean an absolute conveyance as against the plaintiff, in contradistinction to a conveyance to a trustee for the use of the plaintiff. Page 575.

APPEAL from the *Warren* Circuit Court.

Elliott, J.—*Sharer,* the appellee, sued *Wynn* and *wife* and *Benjamin F. Gregory* to enforce an implied or resulting trust. *Wynn* and *wife* demurred to the complaint, but the court overruled the demurrer, to which they excepted.

They then filed an answer of two paragraphs: 1. General denial. 2. That the deed mentioned in the complaint was made, with and by the advice and consent of the plaintiff, to said *Gregory,* as trustee of *Catharine Hughes,* the plaintiff's step-daughter, in consideration of services in work and labor performed by her for the plaintiff. They also placed on file their written agreement and consent, that the

plaintiff and his wife should use and occupy the premises in controversy, free of rent, as long as they should live.

· Reply in denial of the second paragraph of the answer. *Gregory* answered, disclaiming any interest, legal or equitable, in the subject-matter of the suit; but admitting that the premises in dispute were conveyed to him in trust for *Catharine Hughes,* who deceased before the commencement of the suit. The issues of fact were tried by a jury, who found for the plaintiff. ·

Motion for a new trial by the defendants, *Wynn* and *wife,* was overruled, and a decree for the plaintiff on the finding of the jury.

*Wynn* and *wife* appeal. The questions raised in this court, and urged as grounds for reversing the decree are: 1. The court erred in overruling the demurrer to the complaint. 2. The court erred in overruling the motion for a new trial, for the reason that the finding of the jury is not sustained by the evidence. The evidence is all in the record.

The facts stated in the complaint are, that in the year 1858 the plaintiff employed *Boliver Robb,* as his agent, to purchase a lot of ground of about one acre, at or near *Williamsport,* in *Warren* county, in this state, for said plaintiff, upon which the plaintiff designed to erect a house suitable for himself and wife to live in; that said *Robb* did so purchase for the plaintiff said lot of ground, which is fully described in the complaint; that the plaintiff paid, as the consideration therefor, the sum of $100 to one *Robert D. Purviance,* the then owner of the same; that the said *Purviance,* instead of conveying said lot to the plaintiff as he should have done, conveyed it to the defendant, *Benjamin F. Gregory,* as a trustee for and for the use of one *Catharine Hughes;* that the deed was so made to *Gregory,* without the knowledge or consent of the plaintiff; that since the making of said deed, the said *Catharine Hughes* departed this life, leaving as her only surviving child and heir at law, the defendant, *Jane Wynn,* who

is the wife of *Cunningham Wynn*. Prayer, that the court decree that the plaintiff is entitled to a conveyance of the premises, and that the defendants be compelled to convey the same to him, or for the appointment of a commissioner to make such conveyance, and for general relief. In view of the facts of the case, as subsequently developed by the evidence, the complaint is not very artfully drawn, but we think the facts stated sufficient to establish a trust in favor of the plaintiff.

The 6th section of "An Act concerning Trusts and Powers," 1 G. & H. 651, enacts that "when a conveyance for a valuable consideration is made to one person, and the consideration therefor paid by another, no trust shall result in favor of the latter; but the title shall vest in the former, subject to the provisions of the next two sections."

The *eighth* section of the same act, being one of the *two* to which the *sixth* is subject, provides that "the provisions of the section next before the last (the *sixth*) shall not extend to cases where the alienee shall have taken an absolute conveyance in his own name, without the consent of the person with whose money the consideration was paid, or where such alienee, in violation of some trust, shall have purchased the land with moneys not his own," etc. But it is argued by the appellants' counsel, that the case at bar is not brought within the exceptions of the eighth section, for the reason that the conveyance to *Gregory* is not an absolute conveyance to him, but is only in trust for *Catharine Hughes*. The complaint avers that *Boliver Robb*, as the agent of the plaintiff, and with his money, purchased the land of *Purviance* for the plaintiff, and that *Purviance*, without the knowledge or consent of of the plaintiff, conveyed it to *Gregory* in trust; *not for the plaintiff*, who paid the purchase money, but for *Catharine Hughes*, a stranger to the transaction. *Gregory*, the *alienee*, received the conveyance in trust; *he* did not pay the purchase money, nor did *Catharine Hughes*, for whose use it was so conveyed.

The conveyance, as to the plaintiff, is absolute, and deprives him of the title; indeed, under the provisions of the 13th section of the above-recited act, 1 G. & H. 652, the conveyance, as described in the complaint, would seem to be void as to the trustee, and operates as a direct and absolute conveyance to *Catharine Hughes.* That section reads thus: "A conveyance or devise of land to a trustee, whose title is nominal only, and who has no power of disposition or management of such lands, is void as to the trustee, and shall be deemed a direct conveyance or devise to the beneficiary." The conveyance to *Gregory* is not made a part of the complaint, and whether it does or does not come within the provisions of this section, we do not deem material to the decision of the question raised on demurrer; as, in our opinion, the words "*absolute conveyance in his own name,*" used in the 8th section of the act, as applied to the facts stated in the complaint in this case, mean *absolute* as against the plaintiff, in contradistinction to a conveyance to the trustee for the use of the plaintiff.

It is also urged that the complaint is defective in not sufficiently showing that the consideration of the conveyance to *Gregory* was the $100 paid by the plaintiff. We think otherwise.

There was no error in overruling the demurrer to the complaint.

The remaining question to be considered is, does the evidence sustain the finding of the jury?

The only point presented in the case by the evidence, in reference to which there is any controversy or conflict, is as to whether the conveyance was made to *Gregory* in trust for *Catharine Hughes,* with the knowledge and by the direction of the plaintiff, or whether it was so made without his knowledge or consent.

The *uncontroverted* facts of the case, as they appear in evidence, are in substance these: *Sharer,* the plaintiff, in the year 1858, was the owner of thirty-nine acres of land in *Warren* county, which he sold and conveyed to *Boliver*

*Robb.* In consideration of which, *Robb* agreed to purchase the lot in controversy in this suit, and build a house on it suitable for *Sharer* to live in, and pay the residue of the purchase money to *Sharer* in annual payments of $100. The lot was owned by *Purviance*, and *William Robb*, the father of *Boliver*, and as his agent, contracted for the lot with one *Cissna*, the agent of *Purviance*, and paid him the purchase money. *Boliver Robb* built the house on the lot according to contract, and *Sharer* took possession of it, and so continued in possession at the time of the commencement of the suit. *Purviance* conveyed the lot to *Gregory* in trust for *Catharine Hughes.* The deed contains this statement: "Which conveyance I do hereby make in consideration of $100 paid me by *John Sharer* for the said *Catharine Hughes*, on account of services, work, and labor performed by said *Catharine Hughes* for the said *John Sharer*, as is stated by the said *Sharer* and the said trustee, and this conveyance is made to *Gregory*, as said trustee, for said *Catharine Hughes*, for the reason, as is stated, that said *Catharine* is not competent to trade or transact business for herself."

*Sharer*, at the time of the transaction, was a very old man, being about ninety years of age. *Catharine Hughes* was his step-daughter, was not considered to be of sound mind, but she was a good girl to work, and had lived with and worked for *Sharer* and his wife for many years after she became of age, and taken care of the "old folks," and continued to do so until the time of her death, which occurred some time after the execution of the deed, and before the commencement of this suit. *Jane Wynn*, the wife of the defendant, *Cunningham Wynn*, is the only child and heir of *Catharine Hughes.*

The circumstances under which the conveyance was made seem to be shrouded in obscurity, and as they involve the controverted point in the case, we will refer to the evidence.

*Boliver Robb* testified, in reference to the deed: "I know

nothing how the deed came to be made as it was; was not present when it was made that I recollect. Don't know who received the deed; don't know who got it recorded or who paid the recorder's fee. Never heard any conversation by the plaintiff, or in his presence, that I recollect of, concerning the deed. Last fall he came to me and said that I had not made the deed right. I told him I knew nothing about the making of the deed. He then said it was not the intention to have the deed made as it now stands."

*William Robb* at first testified, that he had no recollection of being present when the deed was made, or knowledge as to how it came to be made to *Gregory.*

*Gregory* then testified, that he wrote the deed; that some time in the fall of 1858 *William Robb* came to him, and related the circumstances of the trade between his son *Boliver* and the old man *Sharer;* that it was desired by the old folks to secure to *Catharine Hughes* a living; that she had been a very dutiful and faithful servant in taking care of the old folks in their old age, and remained and continued to do so after she was twenty-one years of age; that she was not of sound mind, and that *Sharer* and *wife* did not want *Jesse Sharer,* the old man's son, to come in at their death and deprive her of the means of living, and that he drew up the deed accordingly; but had no recollection of ever having any conversation with *Sharer* until last fall, a short time before this suit was commenced. He then called on the witness for the deed; he got it, and then told *Sharer* it was not made to him, but to the witness, as trustee for *Catharine Hughes. Sharer* seemed excited; said he thought the deed was all right, and that he wanted a deed for the lot. *Gregory* further testified that the deed had been all the time in his possession, and he did not think that *Sharer* had ever seen it before.

*William Robb* was then recalled, and testified, that he then recollected being present when the deed was made, but still had no recollection of giving *Gregory* the direc-

tions testified to by him, as to how the deed should be made, or of having received such directions from *Sharer;* rather thought he might have given *Gregory* the directions, and if so, that it was done with full authority from *Sharer*, as he was never in the habit of attending to the affairs of others without authority to do so.

*John Sharer*, the plaintiff, testified, and denied giving any authority to have the deed made to *Gregory* in trust for *Catharine Hughes*, or having any knowledge that it was so made, but always supposed that it was a good deed to himself, until he called on *Gregory* for it at the time testified to by him.

On cross examination, he said that he had the deed transferred and recorded, and paid the fees.

*Isaiah Tharp* testified, that about three years prior to the trial he was at the plaintiff's house, and that the plaintiff and his wife were talking to him about the deed made to Mr. *Gregory*, trustee for *Catharine Hughes*, and they both stated distinctly that they had the deed made as it was, for the purpose of securing to *Catharine Hughes* a living, and compensating her for services in working for them in their old age; that she had been a faithful servant to them.

The evidence shows that *Sharer's* memory, from his extreme age, is very frail.

It is thus manifest that the evidence is conflicting upon the material and controverted point, as to whether the deed to *Gregory* in trust was made with the knowledge and consent of *Sharer*. In a careful review of the evidence in the case, and judging of it from the stand-point afforded by the record, we are not prepared to say that, if occupying the position of the jury trying the questions of fact, we should find the facts as they were found by the jury, nor is it necessary that we should. The issues of fact were properly submitted to the jury, and the evidence in the case is too conflicting, and the material facts involved in too much uncertainty, to justify this court in reversing the case, on

the ground that the verdict of the jury is contrary to the evidence.

The judgment of the Circuit Court is affirmed, with costs.

*J. McCabe*, for appellants.

*J. H. Brown*, for appellee.